UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WAKENDER DICKEY                                                                                    Plaintiff

v.                                                                          Civil Action No. 3:18-CV-0080-RGJ-CHL

DENIS MCDONOUGH, SECRETARY U.S.                                                  Defendant
DEPARTMENT OF VETERANS AFFAIRS

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Denis McDonough, Secretary, U.S. Department of Veterans Affairs,' moves for Summary Judgment [DE 59]. Plaintiff Wakender Dickey ("Dickey") responded [DE 63], and the Defendant submitted a Reply [DE 64]. This matter is ripe. For the reasons below, the Court **GRANTS** the Defendant's Motion [DE 59].

### I.   BACKGROUND

**2008**

The Department of Veterans' Affairs ("VA") hired Dickey in 2008 to work in its Louisville, Kentucky location as a rehabilitation counselor. [DE 59-1, at 156-58]. Tameel Benders was Dickey's first-line supervisor. [DE 59-1 at 158, 164; DE 59-2 at 225-26]. Jan LeClerc was Dickey's second-line supervisor. [DE 59-1 at 159-60]. The VA employed Dickey in that role until 2012, when the VA hired her as the Vet Success Counselor at Eastern Kentucky University ("EKU") in Richmond, Kentucky. [DE 59-1 at 159-60].

**2012**

As the Vet Success Counselor at EKU, Dickey's office was located in the EKU Office of Military and Veteran Affairs per a memorandum of understanding between the VA and EKU. [DE 59-1 at 159-66, 168-70, DE 59-2 at 226]. EKU employed all the other persons working in the EKU

1

Office of Military and Veteran Affairs. [DE 59-1 at 173]. Benders and LeClerc with the VA remained Dickey's direct supervisors. [DE 59-2 at 226; DE 59-4]. As Vet Success Counselor, Dickey helped veterans adjust to school at EKU and with VA benefits. [DE 59-2 at 226; DE 59-1 at 176-80]. Dickey had a key to the Office of Military and Veterans Affairs and could access the building anytime she required. [DE 59-2 at 230; DE 53-1 at 213; DE 59-3 at 304-05].

**2014**

In 2014, EKU hired William Larkin ("Larkin") to be the EKU Director of the Office of Military and Veteran Affairs. [DE 59-3 at 249-57]. EKU employed Larkin. [DE 59-4 at 321]. Larkin did not supervise Dickey and was not responsible for her day-to-day activities. [DE 59-4 at 321; DE 59-3 at 254, 259-60, 262-63; DE 59-2 at 226]. Likewise, the VA did not supervise or have authority over Larkin. [DE 59-3 at 261]. Larkin supervised the three other EKU employees in the Office of Military and Veteran affairs: Debra Bush, Jamie Roberts, and Cynthia Palka. [DE 59-3 at 259-60]. Larkin and the other employees in the EKU office are white. Dickey was the only black person working in the EKU office. Dickey's direct supervisor, Benders, is black. [DE 59-1 at 164; DE 59-2 at 225-26].

Shortly after Larkin's start, Dickey testified that Larkin cancelled two formal meetings with her. [DE 59-1 at 180-81, 183-84]. Dickey went to Gene Palka, Larkin's direct supervisor, to discuss her concerns about Larkin. *Id.* After the meeting with Palka, Dickey testified that Larkin asked to meet with her and "scolded" her for "bad-mouthing" him to Palka. [DE 59-1 at 185-86]. Larkin denied "scolding" Dickey about her meeting with Palka. [DE 59-3 at 272]. Larkin testified that Palka met with him and informed him that Dickey was trying to move from the EKU Office of Military and Veteran Affairs to the main campus and wanted to modify the memorandum of understanding between the VA and EKU. [DE 59-3 at 267-71]. Larkin testified that Palka told him

2

it was too beneficial for veterans to have the resources co-located, that EKU was not going to separate Dickey from the EKU Office of Military and Veteran Affairs, and for Larkin work out the issue with Dickey. [DE 59-3 at 267-70].

In July 2014, the VA temporarily reassigned Dickey from EKU while the VA investigated complaints made by Larkin and the student president of the Veteran's Club about Dickey. [DE 59-1 at 188-89]. One of the complaints involved Dickey's handling of a dispute between two veterans on campus. Larkin testified that Dickey mishandled a situation involving two veterans on campus, where one veteran alleged that he would bring a gun to school. [DE 59-3 at 273-74]. Larkin testified that Dickey took the issue to the instructor of the class and then approached the Dean of the College of Business to complain about the instructor. [DE 59-3 at 274-75]. Larkin testified that the EKU administration was unhappy with Dickey's handling of the event. [DE 59-3 at 275-76].

In August 2014, Dickey signed a memorandum of guidance with the VA addressing the issues that the VA investigated in July 2014 and returned to EKU's campus. [DE 59-5; DE 1, ¶ 28]. The guidance included Dickey being present and available in her office during 80% of her workweek and that she must notify the Director of the Office of Military and Veteran's Affairs, anytime she will be away from the office longer than 30 minutes. [DE 59-5]. The guidance advised Dickey that "[i]t is not within the scope of your duties to recommend changes to the MOU [Memorandum of Understanding]. It is also outside the scope of your authority to seek alternative work hours or office space on campus." [DE 59-5 at 336]. The guidance further advised Dickey "[y]ou should be aware that your inquiry into tuition and book benefits provided by EKU, may be a potential ethics violation. Your completion of Ethics TMS . . . is required." [DE 59-5 at 336].

After returning to EKU's campus, Dickey met with Larkin, Gene Palka, and LeClerc for two hours. [DE 59-3 at 276-78, DE 59-1 at 195-96; DE 59-4 at 322-23]. During the meeting,

Dickey agreed to provide her calendar to EKU so the staff in the EKU office would know where she was when veterans needed assistance. [DE 59-1 at 198, 201-02; DE 59-3 at 277-79, 286-87; DE 59-4 at 322]. Dickey claims that after the meeting, Larkin raised his voice, chastised her, and pointed his finger at her. [DE 59-1 at 202-03]. Larkin and LeClerc deny Dickey's description of Larkin's behavior. [DE 59-3 at 285-88; DE 59-4 at 322-23].

### August 2014 to May 2015

After Dickey returned to the EKU office in August 2014, she claims many incidents occurred over the course of the next year: the EKU staff excluded her from meetings [DE 1, ¶¶ 41-42]; the EKU staff did not inform her of the arrival of a new fax machine [DE 1, ¶ 43, DE 59-1 at 208-09]; EKU did not notify her the office would be closed in October 2014 [DE 1, ¶ 44]; EKU did not upload her VA flyer the EKU website [DE 1, ¶ 45; DE 59-7 at 370-73]; the EKU staff did not inform her when the new EKU brochures arrived [DE 59-7 at 373-78]; EKU did not notify her of an alleged bomb threat on campus [DE 1, ¶ 50]; EKU did not provide her with an EKU email address [DE 1, ¶ 50]. In addition, there was an issue over Dickey parking in a handicapped parking spot behind the EKU Office of Military and Veteran Affairs without an EKU-issued handicap parking sticker. [DE 59-8 at 156-58, 173-74].

During this time, LeClerc told Larkin EKU did not have to include Dickey in EKU meetings because Dickey was not an EKU employee. [DE 59-4 at 324, DE 59-2 at 233]. Larkin testified that the staff tried to include Dickey in meetings nonetheless because Dickey requested it. [DE 59-3 at 299-300, 309-10]. Other office staff testified the office did not have formal meetings, but impromptu meetings occurred with whomever was present in the office. [DE 59-6 at 345, 363-65].

She also claims Larkin yelled at her four times during this timeframe. [DE 1, ¶¶ 47, 52, 55, 58]. Dickey claims Larkin pointed his finger at and raised his voice to her in front of a student in February 2015. [DE 63 at 444]. Dickey claims Larkin cussed, berated her, and approached her in an intimidating manner in April 2015, because he wanted to know her whereabouts. [DE 63 at 445]. Finally, Dickey claims that on May 5, 2015, Larkin yelled, belittled, and intimidated her in front of the EKU staff in a confrontation about a brochure issue. [DE 63 at 445]. Larkin testified that he never yelled at Dickey. [DE 59-3 at 301-02]. The other workers in the EKU office testified that they never witnessed Larkin yelling at Dickey. [DE 59-6 at 354; 59-8 at 407; 59-9 at 413].

Dickey also claims that her VA supervisor, Bender, mocked her disability in front of another co-worker. [DE 1, ¶ 82]. Benders denies this allegation. [DE 59-2 at 226 at 6-7].

On May 5, 2015, Dickey emailed her supervisors with the VA, Benders, and LeClerc, stating that the EKU office was a hostile work environment because of Larkin. [DE 1 ¶ 59]. The VA conducted an investigation. [DE 59-2 at 227-28]. Dickey chose not to participate in the VA's investigation and initiated an EEO action against the VA and EKU. [DE 59-4 at 322]. Dickey's EEO complaint was the first instance Dickey couched her complaints in terms of race, gender, or age. [DE 59-8 at 145-46]. The VA removed Dickey from EKU and into a position in Lexington, Kentucky that was the same pay and grade as her EKU position. [DE 59-2 at 236].

**2018**

In 2018, Dickey instituted this litigation, alleging that the VA subjected her to hostile work environment based on her race and gender in violation of Section 703 of Title VII of the Civil Rights Act [DE 1, ¶¶ 67-73, 74-80]. Dickey also alleges that the VA discriminated against her because of her disability. [DE 1, ¶¶ 81-83]. Finally, Dickey alleges the VA retaliated against her by removing her from EKU in 2015 because she filed an EEO claim. [DE 1, ¶¶ 84-].

5

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

6

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

The Defendant moves for summary judgment on Dickey's hostile work environment claims, retaliation claim, and disability discrimination claim. The Court addresses each claim below. At the outset, Dickey did not respond to the Defendant's motion for summary judgment as it relates to her hostile work environment claim based on gender and her disability discrimination claim. Thus, Dickey concedes the Defendant's arguments for summary judgment on those claims. *See Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted); *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to a motion or argument in it is grounds for the district court's grant of an unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Paulmann v. Hodgdon Powder Co., Inc.*, No. 3:13-CV-0021-CRS-DW, 2014 WL 4102354, *1-2 (W.D. Ky. Aug. 18, 2014) (holding that plaintiff's failure to respond or otherwise oppose defendant's motion to dismiss established that the plaintiff had waived opposition to the motion). The Court thus focuses its analysis on Dickey's hostile work environment claim based on race and retaliation claim.

### 1. Hostile Work Environment Based on Race

Establishing a prima facie case of a racially hostile work environment requires a plaintiff to show: (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was severe or pervasive enough to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co.,* 643 F.3d 502, 512 (6th Cir. 2011).

The Defendant argues that Dickey cannot establish the second, third, and fourth elements—that she cannot establish she suffered harassment, that she cannot establish harassment based on race, and that she cannot establish the harassment was severe or pervasive enough. [DE 59 at 140-42; DE 64 at 507]. A plaintiff can show that harassment was based on race by either putting forth "direct evidence of the use of race-specific and derogatory terms," or by showing that the harassing party treated employees not in the plaintiff's protected class differently—that is to say, better. *Williams*, 643 F.3d at 511. To determine whether harassment was severe or pervasive enough, the Court looks at the combined effect of all alleged acts of harassment. *See id.*

Dickey's hostile work environment claim rests on the behavior of Larkin. Dickey presents no direct evidence of the use of race-specific and derogatory terms by Larkin or anyone else. Instead, she argues that Larkin treated the white EKU employees in the Office of Military and Veterans Affairs differently than Dickey. [DE 63 at 449]. Dickey was the only black employee in the EKU Office of Military and Veteran Affairs. Dickey was the only VA employee in the EKU Office of Military and Veteran Affairs. Under the memorandum of understanding between EKU and the VA, Dickey was not an employee of EKU. The Court reviewed the depositions and other evidence of record submitted by the parties relating to Dickey's claims that Larkin and the EKU

staff did not include her in meetings, did not inform her about the new fax machine, did not inform her that the office would be closed, did not notify her of the of new brochures, and did not provide her with an EKU email address. Dickey testified that she believed these instances resulted from Larkin retaliating against her for complaining about him to his supervisor, Gene Palka. [DE 59-1 at 180, 205-06]. The evidence shows these incidents to result from Dickey not being an EKU employee, not maintaining regular and consistent office hours, not being present in the office, and not being permitted by the VA to attend certain events. The memorandum of understanding between EKU and the VA did not require any of these instances to be different. There is no evidence that these incidences related to Dickey's race. Likewise, even if Larkin yelled at Dickey as she claims, there is no evidence that these instances related to her race, but related to disagreements on how Dickey's role operated within EKU. No reasonable juror could find these instances evidence of Larkin treating EKU's staff in the Office of Military and Veterans Office better or differently than Dickey.[1]

But even assuming Dickey could demonstrate a genuine issue of material fact as to the third element, Dickey cannot show the fourth element, that the harassment was severe or pervasive enough to alter the conditions of employment and create an abusive working environment. To be "severe or pervasive," (1) the conduct must be enough to create an environment that a reasonable person would find hostile or abusive, and (2) a plaintiff must subjectively regard the environment as abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). In determining whether an environment is one that a reasonable person would find hostile or abusive, courts look to the

---

[1] Dickey states in her response to the motions for summary judgment, without citing any support or evidence of record, that she worked without incident from 2012 through 2014 with the prior Director Allen Beck. [DE 63 at 449]. Dickey cites no evidence in support of this statement. But reports submitted by the Defendant from the investigations show that the previous director may have been too relaxed and that Larkin was hired to remedy this. [DE 64-3]. LeClerc testified that Larkin was a very different manager than had previously been there and "[h]e was brought in to sort of clean up that office." [DE 59-4 at 322].

frequency of the claimed conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with the employee's work performance. *Id.* at 23. While an employer may be liable if it negligently handles coworker harassment, mere teasing, offhand comments, and isolated incidents are not sufficient unless they are extremely serious. *See Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998); *Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013). Most of the instances Dickey complains of do not constitute "unwelcome conduct or communication," under the second element of a claim for hostile work environment. But viewing the evidence in a light most favorable to Dickey, the incidents complained of do not objectively rise to the level of harassment that was severe or pervasive enough to alter the conditions of employment and create an abusive working environment. Dickey's claims that as a VA employee, EKU excluded her from some EKU staff meetings, excluded her VA brochure on the EKU website, and did not inform her about a campus bomb threat, an office closure, or the arrival of a new fax machine or brochures, amount to minor inconveniences, oversights, or petty tribulations of the workplace. Assuming for purposes of this motion that Larkin yelled at Dickey on the four occasions claimed, such instances were brief and in the context of disagreements on how to operate and collaborate between EKU and the VA.

The Sixth Circuit "has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). For instance, in *Clay v. United Parcel Serv., Inc.*, the Sixth Circuit held that fifteen specific incidents of racially motivated harassment spanning a two-year period, including the refusal to remove the plaintiff from a position that required heavy lifting that led to a groin injury to the plaintiff, were not severe or pervasive enough to be actionable. 501 F.3d 695, 707-08 (6th Cir. 2007); *see also Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x

10

747, 749, 751 (6th Cir. 2005) (holding eight incidents over five years—including statements from the Muslim plaintiff's coworker that if it was up to him, he would "put [plaintiff] in a box and send [him] back to [his] country," and that the plaintiff could hear better if he got the sand out of his ears—were not severe or pervasive enough to create a hostile work environment); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (affirming summary judgment for the defendant even though the female plaintiff asserted that her male supervisor implied he would improve her performance evaluation in exchange for sexual favors, told several dirty jokes in her presence, called her "hot lips," and commented several times about her state of dress).

In sum, even taking all the incidents alleged in total, they do not objectively rise to the level of a workplace permeated with discriminatory intimidation, ridicule, and insult that is severe or pervasive enough to alter the conditions of Dickey's employment and create an abusive working environment. Dickey's hostile work environment claim thus fails and the Defendant will be granted summary judgment.[2]

### 2. Retaliation for Dickey's EEO Complaint

Dickey alleges that the VA move her away from the position at EKU and reassigned her to a position in Lexington, Kentucky in retaliation for filing an EEO claim. 42 U.S.C. § 2000e-3 (a) prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an unlawful employment practice. Dickey may establish retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of

---

[2] The Defendant also disputes that Dickey can show the VA can be liable for a non-employee's behavior and is thus unable to satisfy the fifth element of a hostile work enforcement claim. [DE 59 at 143]. While the Court is doubtful that Dickey can show employer liability on this claim, the Court need not reach this issue as Dickey's hostile work enforcement fails on the third and fourth elements.

11

retaliation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). Without direct evidence of retaliation, courts apply the *McDonnell Douglas* discrimination burden-shifting framework to analyze retaliation claims at the summary judgment stage. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Because Dickey offers circumstantial evidence of retaliation, the Court analyzes her claim under the *McDonnell Douglas* framework described above.

To establish prima facie case of retaliation under Title VII, Dickey must show that: (1) she engaged in a protected activity under Title VII; (2) the defendant knew she engaged in a protected activity; (3) the defendant later took an adverse, retaliatory action against plaintiff or the plaintiff faced severe or pervasive retaliatory harassment by a supervisor; (4) the protected activity and the adverse action are causally connected. *Taylor v. Geithner,* 703 F.3d 328, 336 (6th Cir. 2013). If Dickey establishes a prima facie case of retaliation, the burden shifts to the Defendant to produce evidence of a legitimate, nondiscriminatory reason for its actions. *See Imwalle,* 515 F.3d at 544. Defendant's burden, at that stage of the process, is one of production, not persuasion, and no credibility assessment is to be made. *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). Finally, if the Defendant produces a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Dickey to show by a preponderance of the evidence that the legitimate reason offered was a pretext designed to mask retaliation. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Dickey can meet this burden by showing that: (1) the Defendant's stated reason is baseless, (2) the reason offered was not the actual reason for the adverse action, or (3) the reason offered could not explain the Defendant's action. *Imwalle,* 515 F.3d at 545 (citing *Manzer v. Diamond Shamrock Chem.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).

Dickey's filing of an EEO claim is protected activity. It is also undisputed that Benders and LeClerc were aware of Dickey's EEO claim. The Defendant argues Dickey cannot prove the third element of a prima facie case—an adverse employment action. "An adverse employment action has been defined as a materially adverse change in the terms and conditions of [a plaintiff's] employment [such as] a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). The adverse, retaliatory act must be such that "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Randolph v. Ohio Dept. of Youth Services,* 453 F.3d 724, 736 (quoting *Burlington N. and Sante Fe Ry. Company v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006)). "[A] plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 595–96 (6th Cir.2007), cert, denied, 552 U.S. 1258 (2008).

Conclusory opinions about the prestige of a position cannot suffice to show that a change in positions is an adverse action. *See Freeman v. Potter*, 200 Fed. App'x 439, 445 (6th Cir. 2006) ("In general, a lateral transfer, or the refusal to make a lateral transfer, is not a materially adverse action."); *Secherest v. Lear Siegler Services, Inc.*, 2007 WL 1186597 at *4 (M.D. Tenn. 2007) (holding that job transfers and disciplinary write-ups that did not affect the plaintiff's pay, hours, or job duties did not constitute a materially adverse action); and *Burlington*, 548 U.S. at 71 ("To be sure, reassignment of job duties is not automatically actionable"). Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, and

"should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). Dickey's claim that the new position was subjectively less favorable does not satisfy her burden of proving an adverse action to support her claim of retaliation. *See Ellis v. Principi,* 246 Fed. App'x 867, 870 (5th Cir. 2007) (less favorable work assignments and denial of performance award were not adverse actions) and *Choulagh v. Holder*, 528 Fed. App'x 432, 438 (6th Cir. 2013).

After Dickey emailed her supervisors with the VA in May 2015, Benders and LeClerc, stating that the EKU office was a hostile work environment because of Larkin, the VA removed Dickey from EKU and into a position in Lexington, Kentucky that was the same pay and grade as her EKU position. [DE 59-2 at 236]. The Defendant acknowledges that this was an inconvenience for Dickey as a result of increased daily travel and a change of job responsibilities.[DE 59 at 149]. But the Defendant argues it does not rise to the level of an adverse employment action because the pay and grade were the same and the VA had a legitimate business purpose for moving Dickey from EKU as a result of the alleged wrongdoing. [DE 59 at 149]. The Defendant argues out that even if Dickey's allegations about Larkin were true, the VA had no control over EKU or its employees. [DE 59 at 149]. Dickey argues, with no citation to evidence of record, the new position was less prestigious, more stressful, had a case load and burdensome time constraints, and caused financial hardship as a result of its location in a different city. [DE 63 at 458]. Dickey argues the VA should have relocated her to a different place on EKU's campus, not within the EKU Office of Military and Veteran Affairs. [DE 63 at 458].

The new job had the same pay and grade as Dickey's job at EKU. The job required a longer commute but was within a commutable distance of the job at EKU. There is no evidence that it

14

would have been practical or possible for Dickey to move to a location on EKU's campus not within the EKU Office of Military and Veterans affairs. There is no objective evidence of record to support Dickey's claim that the change was materially adverse. Instead, the record shows the VA transferred Dickey to remove her from what she claimed was a hostile work environment. Under the circumstances, a reasonable employee would not have found this transfer to be materially adverse nor have been, based on the transfer, dissuaded from bringing a complaint under Title VII. Instead, a reasonable employee would have understood that the transfer was required by her complaint. *Broadway v. United Parcel Serv., Inc.*, 499 F. Supp. 2d 992, 1004 (M.D. Tenn. 2007). Dickey fails to show an adverse action.

Even if Dickey's transfer were an adverse action, Dickey must show a causal connection between the transfer and her EEO claim to establish a claim of retaliation. To establish a causal connection, Dickey must offer sufficient evidence that her protected activity was the likely reason for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). In other words, Dickey must adduce sufficient evidence from which the Court can infer that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Dickey can show a causal link "through knowledge coupled with a closeness in time that creates an inference of causation . . . [h]owever, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen*, 229 F.3d at 566 (internal quotations omitted). This burden is minimal, and only requires that plaintiff put forth some credible evidence that enables the Court to deduce some causal connection between the protected activity and retaliatory action. *Dixon* at 333.

Dickey argues the VA "could have considered the request . . . for reconsideration. She could have still worked with students in another location on campus" and this shows the VA was motivated by her protected activity. [DE 63 at 458]. The evidence shows that the VA's transfer of Dickey responded to Dickey's claim that Larkin had threatened her, whom the VA had no control. Dickey stated to Benders that she felt she could no longer work in the environment at EKU. [DE 63 at 458]. Dickey has not established an inference that the filing of her EEO complaint was the cause of the transfer.

But even if Dickey could show a causal connection, the Defendant has presented a legitimate reason for the transfer. The VA had no control over EKU or its employees, so the VA moved Dickey to another VA position and location. Dickey must thus show this was a pretext for retaliation. To establish the VA's stated business reason amounts to pretext, Dickey must show that the proffered reason (1) had no basis in fact; (2) did not motivate the adverse employment action; or (3) could not motivate that action. *Manzer,* 29 F.3d at 1084, overruled on other grounds by *Geiger v. Tower Auto.,* 579 F.3d 614 (6th Cir. 2009). Ultimately, to carry her burden in opposing summary judgment, Dickey must produce sufficient evidence from which a factfinder could reasonably reject Defendant's explanation of why it moved Plaintiff off the EKU campus. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

There is no evidence that the VA's decision to remove Dickey from what she claimed was as a "hostile work environment" was a pretext. Dickey presents no evidence that the VA could have considered any other option. The Defendant cites evidence that EKU wanted the VA employee in its Office of Military and Veterans Affairs for the convenience of its veteran students. [DE 64 at 519; DE 59-3 at 267]. There is no evidence that placing Dickey in another location on EKU's campus would have been feasible or would satisfy the memorandum of understanding

16

between EKU and the VA. Dickey fails to establish pretext. Upon review of the record and taking all reasonable factual inferences in Dickey's favor, she still fails to present sufficient evidence to withstand summary judgment. Dickey has not produced evidence that a reasonable fact-finder could conclude the VA's legitimate, nondiscriminatory reasons were a pretext. The Defendant's motion for summary judgment on Dickey's retaliation claim is granted.

### IV. CONCLUSION

Accordingly, for the stated reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [DE 59] is **GRANTED.** The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

April 19, 2021